**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**LAUREL HERDMAN,**

                **Plaintiff,**　　　　　　　　1:10-cv-1328
　　　　　　　　　　　　　　　　　　　　　　　　(GLS/DRH)

        v.

**ELIZABETH HOGAN,**

                **Defendant.**
_____

**APPEARANCES:**　　　　　　　　　　　**OF COUNSEL:**

**FOR THE PLAINTIFF:**
Office of Peter A. Sell　　　　　　　　　PETER A. SELL, ESQ.
225 West 14th Street
Suite 2
New York, NY 10011

Office of Robert N. Isseks　　　　　　　ROBERT N. ISSEKS, ESQ.
6 North Street
Middletown, NY 10940

**FOR THE DEFENDANTS:**
HON. ERIC T. SCHNEIDERMAN　　　　KELLY L. MUNKWITZ
New York State Attorney General　　　Assistant Attorney General
Albany Office
The Capitol
Albany, NY 12224

**Gary L. Sharpe
District Court Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Laurel Herdman commenced this action against defendant Elizabeth Hogan pursuant to 42 U.S.C. § 1983 alleging violations of her First Amendment rights under the United States Constitution.  (*See* Am. Compl. ¶ 1, Dkt. No. 13.)  Pending is Hogan's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and Herdman's cross-motion to amend.  (Dkt. Nos. 7, 9.)  For the reasons that follow, Hogan's motion to dismiss is granted, and Herdman's cross-motion to amend is denied as moot.

## II. Background

### A. Factual History[1]

On November 15 2007, plaintiff Laurel Herdman began working as a Confidential/Investigative Auditor in the Campaign Finance Unit ("CFU") of the Office of Enforcement Counsel for the New York State Board of Elections ("OFC").  (Am. Compl. ¶¶ 7-8, Dkt. No. 13.)  Herdman was appointed to this position by defendant Elizabeth Hogan, her direct supervisor throughout her tenure in the CFU.  (*Id.* ¶¶ 6-7.)

Herdman worked on various tasks during her employment in the CFU, including revising the Campaign Finance Disclosure Handbook of

---

[1] The facts are drawn from Herdman's Amended Complaint and presented in a light most favorable to her. (*See* Am. Compl., Dkt. No. 13.)

2

Instructions, and reorganizing the shared computer storage drive. (*See id.* ¶¶ 9-14.) Her work was regularly commended, and on April 20, 2008 Herdman was promoted by Hogan "to the position of Campaign Finance Training Specialist." (*Id.* ¶¶ 11, 16.) Shortly thereafter, Hogan assigned Herdman the task of ascertaining the cost to the Office of General Services to print and mail select documents in 2008. (*Id.* ¶ 18.) Herdman conducted the requisite research from May 6-8, 2008. (*Id.* ¶ 19). In addition to reviewing the costs for 2008, she "went beyond the assignment" and compiled the same costs for the years 2006 and 2007. (*Id.*)

As a result of her research, Herdman uncovered a discrepancy in the printing costs that she described as "very serious" and possibly "illegal." (*Id.* ¶ 20.) Herdman notified Hogan of her findings via email on May 8, 2008, and later met with her to discuss the findings in person. (*Id.*) That same day, Herdman also sent Hogan a comparison chart that not only included the 2008 costs (the year Hogan specifically requested), but also 2006 and 2007 costs. (*Id.* ¶ 21.) Throughout May 2008, Herdman was involved in multiple meetings to discuss her findings; many of which included Hogan's supervisors. (*See id.* ¶¶ 23-27.) Although her work led to the discovery of what was later explained as an $8,000 accounting error,

3

Herdman avers "the atmosphere surrounding [her] at work changed" after she filed her report on May 8, 2008. (*Id.* ¶¶ 22, 27-28.) Specifically, Hogan "reduced the amount of talking she did with [Herdman] to a minimum"; when the two did speak, Hogan was "dismissive." (*Id.* ¶ 28.)

On July 11, 2008, Hogan fired Herdman. (*Id.* ¶ 31.) At her termination meeting, Hogan told Herdman that "although she was a 'star,'" she was not a "fit" and was "too enthusiastic." (*Id.*) Herdman alleges that this explanation was a "pretext," and in actuality, Hogan fired her in retaliation for reporting the $8,000 discrepancy. (*Id.* ¶ 32.)

### III.  Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV.  Discussion

**A.    Cross-motion to amend**

On February 14, 2011, Herdman filed a response to Hogan's motion to dismiss and a cross-motion to amend her complaint. (*See* Dkt. No. 9.) Because her Amended Complaint was filed within 21 days after service of

4

Hogan's motion under Fed. R. Civ. P. 12(b), leave to amend was unnecessary. Fed. R. Civ. P. 15(a)(1)(B). Herdman's Amended Complaint was docketed on February 16, 2011; accordingly, her cross-motion to amend is denied as moot and Hogan's motion to dismiss will be considered in light of the Amended Complaint. (*See* Dkt. Nos. 13, 14.)

## B.    First Amendment Retaliation

Hogan asserts that Herdman failed to establish a *prima facie* case of First Amendment retaliation because the speech in question, Herdman's May 8, 2008 report, is unprotected speech by a public employee in the course of her official duties. (Dkt. No. 7, Attach. 1 at 4.) Herdman counters that the speech is protected because: (1) it was about "government corruption," and (2) the "report was not in furtherance of one her core duties." (Dkt. No. 12 at 3-5.)

To establish a claim for First Amendment retaliation, Herdman must show that (1) the speech is protected; (2) that Hogan took adverse action against her; and (3), that there was a causal nexus between the protected speech and the adverse action. *See Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir. 2008). Because Hogan concedes that Herdman's Amended Complaint sufficiently alleges facts to support the adverse action

5

prong, the only question is whether Herdman's speech is protected.[2]  (*See* Dkt. No. 7, Attach. 1 at 4.)  The court concludes that it was not.

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006); *see also Weintraub v. Bd. of Educ.*, 593 F.3d 196, 201 (2d Cir. 2010).  Stated another way, if Herdman was not speaking as a citizen, "she has no First Amendment cause of action based on [her] employer's reaction to the speech."  *Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009) (internal citations and quotations omitted).  Accordingly, the court must conduct an objective, practical inquiry to determine whether Herdman's speech was made "pursuant to" her job duties.  *See Weintraub*, 593 F.3d at 202; *see also Garcetti*, 547 U.S. at 421 (defining the operative phrase "pursuant to" as "speech that owes its existence to a public employee's professional responsibilities.").

Here, Herdman admits that she began the research which ultimately

---

[2] Hogan's motion to dismiss does not address the third-prong of the retaliation test. (*See generally* Dkt. No. 7, Attach. 1.)  Since the second prong is dispositive, the court also will not address the third prong.

6

led to the discovery of the $8,000 discrepancy at Hogan's request.  (Am. Compl. ¶ 18, Dkt. No. 13.)  Furthermore, she has not alleged that she conducted any of the research outside the course of her employment, or that she even discussed the "illegal" activity with anyone outside of work.  (*See id.* ¶¶ 19-20.)  Nevertheless, to avoid dismissal, Herdman relies on the fact that her "report of [the] suspected embezzlement scheme . . . had [nothing] to do with the execution of one of [her] core duties as Campaign Finance Training Specialist."[3]  (Dkt. No. 12 at 5.)  In doing so, she argues for a narrow interpretation of the phrase "pursuant to," an interpretation affording dispositive weight to the employee's stated job responsibilities.  However, her argument is unavailing as both the Supreme Court and Second Circuit have addressed this issue.

In *Garcetti*, the Supreme Court stated:

> Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes.

*Garcetti*, 547 U.S. at 424-25.  Furthermore, in *Weintraub,* the Second

---

[3] Indeed, the only change in Herdman's Amended Complaint is the explication of her "core duties" in paragraph 15.  (*See* Am. Compl. ¶ 15, Dkt. No. 13.)

7

Circuit joined the Fifth, Seventh, Ninth, Tenth, and Eleventh Circuits in concluding that "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." 593 F.3d at 203.

Although Herdman attempts to distinguish *Weintraub*, her analysis is unpersuasive. (*See* Dkt. No. 12 at 5-8.) Herdman avers that *Weintraub* is distinguishable because the speech there was directly related to the plaintiff's "ability to properly execute his duties," whereas her speech was unrelated to her capacity to perform her core duties. (*See* Dkt. No. 12 at 7); *Weintraub*, 593 F.3d at 203. In addition, Herdman argues that unlike *Weintraub*, where the plaintiff filed an employee grievance "for which there is no relevant citizen analogue," she used an email, "a channel available to citizens [] generally."[4] (*See* Dkt. No. 12 at 8); *Weintraub*, 593 F.3d at 203-04. However, in highlighting these factual distinctions, Herdman ignores

---

[4] Notably, Herdman does not allege that she ever "communicated with the public about the" alleged embezzlement scheme. *See Weintraub*, 593 F.3d at 205. Instead, she made an internal communication to her direct supervisor, who in turn escalated the report up through the chain of command. (Am. Compl. ¶¶ 20-27, Dkt. No. 13); *see Weintraub*, 593 F.3d at 204 (citing *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008), which collected cases "holding that when a public employee raises complaints or concerns up the chain of command at his workplace about his job duties, that speech is undertaken in the course of performing his job").

8

what *Weintraub* cites as the "central issue after *Garcetti*"—"the role the speaker occupied when" the speech was made.  *See Weintraub*, 593 F.3d at 204 (citing *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692 (5th Cir. 2007)).

Here, it is beyond reproach that Herdman was acting as a Campaign Finance Training Specialist during all of the following times: when she was assigned to review the printing costs; when she researched those costs; and when she reported her findings to Hogan.  (*See* Am. Compl. ¶¶ 18, 19, 20.)  An objective review of these facts demonstrates that Herdman's report on May 8—the speech she claims led to her termination—"owes its existence to [her] professional responsibilities."  (*See id.* ¶ 32); *Garcetti*, 547 U.S. at 421.

Because Herdman has not alleged sufficient facts to demonstrate that her speech is entitled to First Amendment protection, she cannot establish a *prima facie* case of retaliation.  As such, Hogan's motion to dismiss is granted.

## V. <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Herdman's cross-motion to amend (Dkt. No. 9) is

**DENIED** as moot; and it is further

      **ORDERED** that Hogan's motion to dismiss (Dkt. No. 7) is **GRANTED** and Hogan is **DISMISSED** from the case; and it is further

      **ORDERED** that the Clerk close this case; and it is further

      **ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 29, 2011
Albany, New York

_____
Gary L. Sharpe
U.S. District Judge

10